IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-13-017-RAW |
| | ) | |
| RAYMOND A. BARNES and | ) | |
| CHRISTOPHER A. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court are the motions of the defendants for judgment of acquittal or for new trial.¹ Defendants were convicted by a jury of various counts. Both defendants were convicted as to Count One (18 U.S.C. §241) and Count Two (18 U.S.C. §242). Defendant Barnes was also convicted as to Count Three (18 U.S.C. §242), while defendant Brown was acquitted. Defendant Brown, however, was convicted as to Count Four (18 U.S.C. §1001), as to which he was the sole named defendant.

In reviewing a motion for acquittal, the court views the evidence in the light most favorable to the government, and determines whether a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt. *See United States v. Harris*, 369 F.3d 1157, 1163 (10ᵗʰ Cir.2004). The court does not weigh conflicting evidence or consider the credibility of witnesses. *United States v. Delgado-Uribe,* 363 F.3d 1077, 1081 (10ᵗʰ

---

¹Defendant Brown also has joined in defendant Barnes' motions (##170, 171).

Cir.2004). Rather, the court simply determines whether the evidence, if believed, would establish each element of the crime. *Id.*

"To obtain a conviction for conspiracy under §241, the government must prove that the defendant (1) knowingly agreed with another, (2) to injure a person in the exercise of any right guaranteed under the laws of the United States." *United States v. Whitney,* 229 F.3d 1296, 1301 (10th Cir.2000).[2] There is no overt act requirement for proof of the conspiracy. *Id.*

Nevertheless, Count One listed seven overt acts. The first of these (hereafter "Overt Act (a)"), provides as follows: "During or around August 2009, the defendants **Raymond A. Barnes and Christopher A. Brown** struck and beat an unidentified inmate who was restrained in a cell in the detox area and not posing a physical threat to anyone." Before trial, defendants moved to dismiss this overt act from the indictment, and challenged the act by motion in limine as well. Such motions of course presents difficulty in this context. "[T]he Federal Rules of Criminal Procedure do not permit the functional equivalent of a motion for summary judgment, whereby a defendant may test the sufficiency of the Government's evidence in advance of trial." *United States v. Dean,* 2013 WL 6235858 at *3 (N.D.Iowa 2013). This court denied the motion, but stated that "[a]t the conclusion of the evidence, if

---

[2] The court finds there was sufficient evidence for the jury to convict as to Count One. On that basis, the convictions on Counts Two and Three may have been grounded in "*Pinkerton* liability," on which the jury was instructed. *See Pinkerton v. United States,* 328 U.S. 640 (1946). Even apart from *Pinkerton*, however, the court finds sufficient evidence for the jury's verdicts as to Counts Two and Three. Additionally, the court notes again that defendant Brown was acquitted as to Count Three, which detracts from any defense theory that the jury was "inflamed" by evidence or instruction.

2

the court finds the government has failed to prove the challenged overt act, the jury will receive a specific limiting instruction to that effect." Testimony about the alleged incident was presented at trial. Ultimately, the court instructed the jury to disregard the evidence and not consider Overt Act (a) in its deliberations.

Defendants argue that the jury could not "un-hear" this evidence and that it was unfairly and highly prejudicial. The court declines to grant relief on this basis. Jurors are presumed to follow clear instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant. *United States v. Caballero,* 277 F.3d 1235, 1243 (10th Cir.2002). The court finds that the evidence in question does not rise to the level which would rebut the presumption. Moreover, the curative instruction pertained to "testimonial evidence from a single witness that was amenable to easy segregation in the minds of the jury." *Id.*

This conclusion requires further elaboration because defendants make a more specific argument also, an argument which is applicable to Counts Two and Three as well. Defendants contend that the testimony regarding Overt Act (a) was the only evidence from which the jury could have concluded that defendants' actions were taken for purposes of "maliciously and sadistically" causing harm. The constitutional right of which defendants allegedly deprived the victims is the right to be free of cruel and unusual punishment under the Eighth Amendment.

"The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable." *Whitley v. Alberts,* 475 U.S. 312, 319 (1986). Rather, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause," the issue is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan,* 503 U.S. 1, 6-7 (1992). The Supreme Court has stressed that prison officials' decisions are entitled to deference; although this deference "does not insulate from review actions taken in bad faith and for no legitimate purpose, . . . it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley,* 475 U.S. at 322.

The factors relevant to the jury's inquiry include "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley,* 475 U.S. at 321. "But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

In assessing the use of force, "the extent of the injury suffered by [the] inmate is one factor," but an Eighth Amendment excessive force claim can be established even without showing "serious injury." *Hudson,* 503 U.S. at 7. Finally, among the unnecessary and

4

wanton inflictions of pain forbidden by the Eighth Amendment are "those that are totally without penological justification." *Hope v. Pelzer,* 536 U.S. 730, 737 (2002). "Controlling an emergency situation and maintaining order are legitimate penological justifications, but when safety concerns have abated or an emergency has been dispelled, the justification may disappear." *United States v. Budd,* 496 F.3d 517, 531 (6th Cir.2007)(citing *Bell v. Wolfish,* 441 U.S. 520, 546-47 (1979); *Hope,* 536 U.S. at 738.) *See also United States v. Bunke,* 412 Fed.Appx. 760, 765 (6th Cir.2011)("In the absence of any legitimate penological justification, the pain inflicted upon [the inmate] was, by definition, cruel and unusual punishment.").[3]

Defendants contend that the conduct about which evidence was presented <u>did</u> have a legitimate penological justification – maintaining order in the jail. In other words, the good-faith purpose of the "meet and greets" was to maintain discipline with dangerous inmates, to ensure the safety and order of the Muskogee County Jail. Therefore, the conduct was not "punishment" as a matter of law. The government responds that this position does not comport with the aforementioned *Hope v. Pelzer,* 536 U.S. 730 (2002). In *Hope*, the inmate (after engaging in disruptive and dangerous conduct) was handcuffed to a hitching post on two occasions, one for seven hours without regular water or bathroom breaks. The Supreme Court said "Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons and transported back to the prison." *Id.* at 738. The government draws an

---

[3] "Retribution and <u>deterrence</u> are not legitimate nonpunitive governmental objectives." *Bell v. Wolfish,* 441 U.S. 520, 539 n.20 (1979)(emphasis added).

5

analogy to the facts of the present case, characterizing the defendants' interpretation as "an effort to advance the position that corrections officers can physically assault inmates to prevent them from future misbehavior." (#146 at 1-2). The government argues the applicable principle instead is "a use of force is not permissible if it is not a proportionate response to a present threat." *Id.* at 4. The parties' differing interpretations of Supreme Court jurisprudence present the crux of the matter in the case at bar.[4]

During the preparation of jury instructions, the government requested language from the *Hope* decision similar to that previously quoted. The court declined for the reasons that (1) such language did not appear in the model Eighth Amendment instructions the court reviewed and (2) including such language seemed close to directing a verdict for the government. The court did instruct the jury as to "deference," as such language does appear in some model instructions from other circuits. The jury returned (with one exception) verdicts of guilty as to Counts One, Two and Three as to both defendants. While the *Hope* language was not presented to the jury, now that guilty verdicts have been returned, the language is sufficiently strong that an acquittal will not be granted as to those counts.[5]

---

[4]Defendants also assert a violation of the notice component of due process because "no case similar to this one has been found to constitute an Eighth Amendment violation." The court declines to embrace this argument in the present case, because "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier,* 520 U.S. 259, 271 (1997).

[5]Defendants requested an instruction on "defense theory" stating *inter alia* that the government must prove beyond a reasonable doubt that the actions taken by the defendants had no relationship to ensuring order and safety at the jail. The cited authority was *Blackmon v. Sutton,* 734 F.3d 1237 (10th Cir.2013), a case involving the use of a restraint chair on a pretrial detainee. The court declined to give the requested instruction. "While the defendant is entitled to an instruction as to his theory of defense if there is evidence

6

Defendants also move for acquittal based upon the testimony the court permitted regarding CLEET standards. They argue that this constituted opinion testimony, which was received in violation of Rule 701 F.R.Evid. The court disagrees. As the government states, "[t]hese witnesses testified as to the factual content of the training they received, and as to their personal knowledge of the facts forming the basis of the charges." (#172 at 20). Additionally, the court instructed the jury that a departure from CLEET training did not establish a constitutional violation.

Defendant Brown was also convicted as to Count Four. In seeking acquittal, he argues that the government failed to prove each and every element of the crime. The jury was instructed that the elements are: (1) defendant made a false statement to the government; (2) he made the statement knowing it was false; (3) he made the statement willfully; (4) the statement was made within the jurisdiction of the FBI; and (5) the statement was material.

Defendant Brown argues that he was asked about "meet and greets" generally, not about any particular one. Therefore, he asserts, it was not proven beyond a reasonable doubt that his response and his alleged use of the word "gently" was false. The government responds (and the court agrees) that there was no evidence at trial to suggest that "meet and greets" were done in any way other than the ones about which the jailers testified. Viewing the evidence in the light most favorable to the government, the court finds this element satisfied.

---

to support it, the court is not required to give an instruction that misstates the law or that is already covered by other instructions." *United States v. Hollis,* 971 F.2d 1441, 1452 (10th Cir.1992).

Next, defendant Brown argues that the government did not prove beyond a reasonable doubt that the statement was "material" to the FBI. He asserts that the government had already decided to file criminal charges about the "meet and greets" by the time it interviewed defendant Brown. Thus, nothing said by defendant Brown was capable of influencing the government at that time. This is not illogical in the abstract, but case law is to the contrary. "To determine whether a statement is material the appropriate test is to examine whether it has a natural tendency to influence, or is capable of influencing a decision or action by another." *United States v. Lawrence,* 405 F.3d 888, 901 (10th Cir.2005). "[A] statement may be material even though it did not actually influence the agency." *United States v. Galindo,* 543 Fed.Appx. 862, 867 (10th Cir.2013). "A statement can be material even if the agency already knew the answers given by the defendant and even if the receiving agency knows they are false." *United States v. Moore,* 708 F.3d 639, 649 (5th Cir.2013).

It is true that Agent Chapman, during her testimony, did not herself characterize the defendant's statements as material. Such testimony does not appear to be necessary under the case law. Her testimony established that her questions were asked and answered in the course of the jail investigation. This is sufficient for the jury to find the statements material in the context of this case. Therefore, defendant Brown's motion for acquittal will not be granted as to Count Four either.[6]

---

[6]The court finds the cases cited by defendant, such as *United States v. Talkington,* 589 F.2d 415 (9th Cir.1979) to be distinguishable. In *Talkington*, for instance, the appellate court found some (not all) false statements on a form were not material because they dealt with irrelevant criteria as to the exemption the applicant sought. That is not analogous to the facts of this case.

8

Rule 33 F.R.Cr.P. authorizes trial courts to grant new trials "if the interest of justice so requires." A motion for a new trial is not regarded with favor and is only issued with great caution. *United States v. Herrera,* 481 F.3d 1266, 1269-70 (10th Cir.2007). The court may weigh the evidence and assess witness credibility. *United States v. Quintanilla,* 193 F.3d 1139, 1146 (10th Cir.1999). The determination (so far as sufficiency of the evidence is concerned) is "whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred." *United States v. Evans,* 42 F.3d 586, 593 (10th Cir.1994).

Defendant Barnes moves for new trial based upon the testimony as to Overt Act (a). He reiterates the position that this was "the only evidence in the case arguably demonstrating sadistic intent" and the jury could not "unhear it." The instructions to the jury define "sadistically" as "engaging in extreme or excessive cruelty or delighting in cruelty." While the alleged incident described in Overt Act (a) did represent the <u>most</u> extreme incident, a reasonable jury could find that other incidents (which the jury was not told to disregard) could meet this definition as well.

Defendant Barnes also reiterates his argument that the convictions were based upon improper opinion testimony (regarding CLEET standards). For the reasons previously stated, the court denies the motion for new trial on this basis.

Defendant Brown seeks a new trial on the ground that the court erred by declining to allow defense counsel to comment on the government's failure to call the alleged victims

9

named in Counts Two and Count Three respectively, Jace Rice and Gary Torix, as witnesses. The court stands by its ruling. "It is improper to comment upon a party's failure to call a witness equally available to both sides." *United States v. McDuff,* 82 F.3d 414 at *6 (5th Cir.1996). *See also United States v. Hoenscheidt,* 7 F.3d 1528 (10th Cir.1993). Defendant Brown notes the court in *Hoenscheidt* stated that "A witness may be peculiarly available to the other side if the other side alone has physical control over the witness or if the witness would be hostile to or biased against the calling party." *Id.* at 1531. Defendant has not shown, however, that Rice and Torix would have been witnesses hostile to the government. "Where the witness is equally available to both parties, argument about one party's failure to call the witness invites 'back-and-forth . . . speculat[ion] about the meaning of a great deal of non-evidence,' so comment about missing witnesses is generally limited to those under the control of the adverse party." *United States v. Mendoza,* 2009 WL 2031800 (N.D.Ill.2009)(citations omitted).

Assuming *arguendo* the court's ruling was erroneous, the court finds it harmless error. Defendant Brown has not demonstrated that any appropriate comment from counsel upon the government's failure to call these witnesses would have persuaded the jury that the conduct to which other witnesses testified did not occur. A new trial will not be granted on that basis.

It is the order of the court that the motions for judgment of acquittal of defendants Barnes (#168) and Brown (#166) and the motions for new trial of defendants Barnes (#169) and Brown (#167) are all hereby DENIED.

**ORDERED THIS 15th DAY OF APRIL, 2014.**

**Dated this 15th day of April, 2014.**

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma